*U.S. Department of Justice*

*United States Attorney*
*District of Maryland*
*Northern Division*

Rod J. Rosenstein
United States Attorney

Kathleen O. Gavin
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

DIRECT: 410-209-4887
MAIN: 410-209-4800
FAX: 410-962-3091
TTY/TDD: 410-962-4462
Kathleen.Gavin@usdoj.gov

November 20, 2012

Larry Nathans, Esquire
Nathans & Biddle LLP
Sun Trust Building
120 E. Baltimore Street, Suite 1800
Baltimore, MD 21202-1617

Re: James P. Quillen, Jr.   ELH-12-0619

Dear Mr. Nathans:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to your client, James P. Quillen, Jr. ("the defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by Friday, November 30, 2012, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1. The defendant agrees to waive Indictment and plead guilty to a Criminal Information which will charge him with wire fraud affecting a financial institution in violation of 18 U.S.C. Section 1343. The defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2. The elements of the offense to which the defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

a. That there was a scheme or artifice to defraud or to obtain money or property by materially false and fraudulent pretenses, representations or promises that affected a financial institution, as alleged in the Information;

Revised 11/5/09

> b. That the defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud; and
>
> c. That in execution of that scheme, the defendant used or caused the use of the interstate wires as specified in the Information.

### Penalties

3. The maximum sentence provided by statute for the offense to which the defendant is pleading guilty is as follows: imprisonment for thirty (30) years, five (5) years of supervised release and a fine of $1,000,000 or twice the gross amount of gain or loss caused by the offense conduct. In addition, the defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the defendant will serve any term of imprisonment imposed.

### Waiver of Rights

4. The defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

> a. If the defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the defendant, this Office, and the Court all agreed.
>
> b. If the defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

Larry Nathans, Esq.
November 20, 2012
Page 3

twelve jurors would have to agree unanimously before the defendant could be found guilty of any count. The jury would be instructed that the defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c.  If the defendant went to trial, the government would have the burden of proving the defendant guilty beyond a reasonable doubt. The defendant would have the right to confront and cross-examine the government's witnesses. The defendant would not have to present any defense witnesses or evidence whatsoever. If the defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

    d.  The defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

    e.  If the defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f.  By pleading guilty, the defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    g.  If the Court accepts the defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

    h.  By pleading guilty, the defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The defendant recognizes that if he/she is not a citizen of the United States, pleading guilty may have consequences with respect to his/her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his/her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

The defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

5. This Office and the defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

The base offense level for wire fraud is seven (7). Section 2B1.1(a)(1). Because the loss is less than $5,000, there is no increase under Section 2B1.1(b)(1). The adjusted offense level, therefore, is seven (7) prior to any adjustment for acceptance of responsibility.

This Office does not oppose a two-level reduction in the defendant's adjusted offense level, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office may oppose *any* adjustment for acceptance of responsibility if the defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

6. The defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

7. This Office and the defendant agree that with respect to the calculation of the advisory guidelines range and application of the 18 U.S.C. § 3553(a) factors, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set

Larry Nathans, Esq.
November 20, 2012
Page 5

forth in the United States Sentencing Guidelines or in 18 U.S.C. § 3553(a) will be raised or are in dispute.

### Obligations of the United States Attorney's Office

8. At the time of sentencing, this Office will recommend a sentence within the final advisory guideline range that the Court determines to be applicable at sentencing.

9. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the defendant's background, character and conduct.

### Restitution

10. The defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses. The defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. Based on the fair market value of the property that served as collateral for the fraudulent loan, which appraisal was conducted by Lawrence G. LaCroix, SRA, in August, 2012, the parties anticipate that the victim bank will incur no actual loss as a result of the wire fraud scheme. In the event that the victim bank sells the collateralized property for less than the outstanding principal balance on the mortgage loan for the property, it is agreed and understood by the parties that the Court may order restitution. The defendant will be free to challenge the legitimacy and fairness of any sale of the collateralized property on the ground that the victim bank did not make its best efforts to fully recoup its loss through the sale of the collateralized property. The defendant will bear the burden of proof in making any such challenge. The defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

### Waiver of Statute of Limitations

11. The defendant understands and agrees that should the conviction following his plea of guilty pursuant to this agreement be vacated for any reason, then any prosecution that is

Larry Nathans, Esq.
November 20, 2012
Page 6

not time-barred as of the date of the signing of this agreement (including any indictment or counts that this Office has agreed to dismiss at sentencing) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date this plea agreement is signed.

## Waiver of Appeal

12. In exchange for the concessions made by this Office and the defendant in this plea agreement, this Office and the defendant waive their rights to appeal as follows:

- a) The defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the defendant's conviction;

- b) The defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds **six (6)** months' imprisonment.

- c) Nothing in this agreement shall be construed to prevent the defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

- d) The defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

13. The defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the

event that the defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

14. The defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the defendant will receive. The defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

15. This letter supersedes any prior understandings, promises, or conditions between this Office and the defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in

Larry Nathans, Esq.
November 20, 2012
Page 8

writing and signed by all parties.

    If the defendant fully accepts each and every term and condition of this agreement, please sign and have the defendant sign the original and return it to me promptly.

                             Very truly yours,

                             Rod J. Rosenstein
                             United States Attorney

                             By: _____
                                 Kathleen O. Gavin
                                 Assistant United States Attorney

Larry Nathans, Esq.
November 20, 2012
Page 9


I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.


11-26-12
Date

James P. Quillen, Jr.


I am Mr. Quillen's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.


11/26/12
Date

Larry Nathans, Esquire

## Attachment A - Statement of Facts

*The United States and defendant James P. Quillen, Jr. stipulate and agree to the following facts that the United States would have proven beyond a reasonable doubt had this case proceeded to trial. They further stipulate and agree that these are not all of the facts that the United States would have proven had this matter gone to trial:*

At all times relevant, the defendant James P. Quillen, Jr. was a Maryland resident and married to K.Q. Quillen owned and operated Quillen Development, Inc., located in Timonium, Maryland, which was engaged in the business of real estate acquisition and development. K.Q. was not employed outside the home and did not earn any separate income.

In July of 2005, the defendant entered into a contract to purchase a condominium, Unit #201, 909 10th Street South, Naples, Florida, for $2.3 million. The contract listed Quillen Development as the buyer and the defendant signed the contract on behalf of the company. Subsequent to that contract, the defendant realized that neither he nor Quillen Development would qualify for a loan for that purchase if he provided truthful financial information on a loan application. Accordingly, the defendant caused K.Q. to apply for a mortgage loan from GFI Mortgage Bankers, Inc. ("GFI") in her name only for the purchase [1] At the defendant's direction, K.Q. falsely stated on the Uniform Residential Loan Application that she had been employed at Quillen Development, Inc. for the past ten years, that she held the position of Vice-President, and that her monthly income was $70,833. Also at the defendant's direction, a letter printed on Quillen Development letterhead with K.Q. listed as a Vice-President for the company and addressed to an underwriter at GFI, was faxed from Quillen Development's office in Timonium, Maryland to GFI's office in Lynnbrook, New York on March 29, 2006. The letter, bearing a signature in the name of K.Q., falsely stated that K.Q. was re-locating her primary residence from Maryland to Florida because she had been assigned a significant work project in Collier County, Florida that would require her attention for several years. In addition, employees of Quillen Development, as directed by the defendant, falsely confirmed to GFI underwriters, both by telephone on March 29, 2006, and in writing on March 23, 2006, that K.Q. worked for Quillen Development . In truth and fact, as the defendant and K.Q. well knew, K.Q. did not and had never worked for Quillen Development and had no employment income whatsoever.

Relying upon those various false statements and representations about K.Q.'s income and employment history, GFI approved the mortgage loan to K.Q. in the amount of $1,478,750. On April 5, 2006, two days before the scheduled settlement, GFI entered into a contractual agreement with Countrywide Home Loans, Inc. ("Countrywide"), a financial institution within the meaning of 18 U.S.C. Section 20, in which Countrywide agreed to purchase the mortgage loan from GFI. GFI completed settlement on the loan with K.Q. on April 7, 2006. Shortly after

---

[1] Although the loan was in K.Q.'s name only, the property was titled in the joint names of Quillen and K.Q.

1

the settlement, GFI sold the loan to Countrywide in accordance with the April 5 contractual agreement.

Less than five months after the settlement and sale of the loan to Countrywide, the mortgage loan was in default for failure to make the required monthly payments. Bank of America, another financial institution within the meaning of 18 U.S.C. Section 20, eventually took over the non-performing loan. After unsuccessful attempts to obtain payment from K.Q., Bank of America foreclosed on the property in the spring of 2012. To date, Bank of America has not sold the property. The current principal balance of the loan is approximately $1,471,894.17. The fair market value of the property as of August 28, 2012, according to an appraisal conducted by Lawrence G. LaCroix, SRA, of the Appraisal Shoppe, Inc. is $1,545,000.

GFI would not have approved the mortgage loan application nor would it have proceeded to settlement in April of 2006 if it had known that the information provided on the loan application and to its underwriters about K.Q.'s income and employment was false. Likewise, neither Countrywide nor Bank of America would have purchased the mortgage loan if the institution had known the truth about K.Q.'s income and employment information.

At all times, the defendant acted knowingly and willfully and with the specific intent to defraud GFI and the successor lending institutions in connection with the mortgage loan for the condominium property known as Unit #201, 10th Street South, in Naples, Florida.

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case.

Agreed to this 16 day of November, 2012.

_____
James P. Quillen, Jr.

2